UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12270-GAO

MAINE POINTE, LLC,
Plaintiff,

v.

PETER STARR, individually and in his capacity as President of Gestion Velocitas, Inc.,
and GESTION VELOCITAS, INC.,
Defendants.

OPINION AND ORDER
February 3, 2011

O'TOOLE, D.J.

The plaintiff, Maine Pointe, LLC, claims that the defendants, Peter Starr and Gestion Velocitas, Inc., intentionally interfered with advantageous business relations and violated the terms of their Independent Contractor/Consultant Agreement ("Agreement") by, among other things, accepting employment with a competitor of Maine Pointe, soliciting Maine Pointe's clients or prospective clients, and soliciting Maine Pointe's employees or former employees. Maine Pointe has moved the Court to enjoin the defendants from engaging in such activities.

**I.**     **Background**

Maine Pointe is a consultancy firm. It analyzes businesses and recommends ways to increase efficiency and competitiveness. Maine Pointe provides services for businesses primarily in Canada and the United States.

Starr is a citizen and resident of Canada. He is the president and shareholder of Gestion Velocitas, a company incorporated in Canada. Gestion Velocitas provides sales

management and consulting services. It employs Starr and one other employee who works in an administrative capacity.

In 2005, Gestion Velocitas began providing services to Maine Pointe under the Agreement. The Agreement provides that it is "by and between Maine Pointe, LLC . . . and Gestion Velocitas, Inc. . . . ." (See Independent Contractor/Consultant Agreement 1 (dkt. no. 1-3).) It was signed by Starr "for Gestion Velocitas Inc." (Id. at 7.) The Agreement provides that an action arising from the Agreement "shall be filed and adjudicated solely in a court of competent jurisdiction within the Commonwealth of Massachusetts." (Id. at 6.)

The Agreement contains a number of restrictive covenants. Specifically, it contains covenants not to compete with Maine Pointe, not to solicit Maine Pointe's customers or prospective customers, not to entice Maine Pointe's contractors or independent contractors to discontinue their relationships with Maine Pointe, and not to reveal any of Maine Pointe's "trade secrets, confidential information, and/or propriety information . . . including . . . customer and supplier lists . . . and all other information or intellectual property proprietary to [Maine Pointe] or its customers, clients, suppliers, employees or contractors and not generally available to the public . . . ." (See id. at 2-3.)

In his work for Maine Pointe through Gestion Velocitas, Starr tried to develop new clients for the company. His role was primarily to target Canadian companies, although he did develop, in 2005, one client from New York State. Starr states that he met with executives from the gas division of Suncor Energy, Inc., ("Suncor") in 2009 and 2010 who told him that they would not hire Maine Pointe for their consulting services because they already had retained a consultancy firm. He also states that he contacted

someone at Marathon Oil Corp. ("Marathon Oil") in early 2010 and was told that Marathon Oil was not interested in hiring a consultant.

In September 2010, Maine Pointe informed the defendants that it intended to terminate the Agreement. The next month, Starr began working as an employee for Renoir Consulting Ltd. Mauritius ("Renoir"). Renoir is a consultancy firm with offices in locations including Canada and the United States. There is no evidence that Gestion Velocitas has any contractual relationship with Renoir.

Maine Pointe claims that Starr has wrongfully solicited for Renoir business from two of Maine Pointe's prospective clients, namely, Marathon Oil and Suncor. Maine Pointe also claims that Starr solicited former employees of Maine Pointe to work for Renoir. Maine Pointe thus has brought the present action against Starr and Gestion Velocitas and now moves the Court to issue an injunction against the defendants.

## II.   Discussion

Starr first argues that the Court lacks personal jurisdiction over him. "A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quotations and citations omitted). General jurisdiction exists where a defendant has "engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Specific jurisdiction exists "over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); see also United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2003). To determine

if sufficient minimum contacts exist, the First Circuit applies the following three-part analysis.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995).

In the present case, the available evidence does not support either general or specific personal jurisdiction over Starr. As for general jurisdiction, there is no evidence of "continuous and systematic" activity by Starr in Massachusetts. Furthermore, there appears to be no specific jurisdiction because the claims here do not arise out of, or relate to, Starr's activities in Massachusetts. Starr works and resides in Canada. He is a Canadian citizen. He was hired primarily to solicit Canadian companies. There is no evidence that he solicited any companies in Massachusetts. It is true that he signed the Agreement with Maine Pointe, and that Agreement states that actions arising from the Agreement will be adjudicated solely in a Massachusetts court. Nevertheless, Starr, in his individual capacity is not a party to the Agreement. Instead, the Agreement states that the contract is "by and between Maine Pointe, LLC . . . and Gestion Velocitas, Inc." Furthermore, when Starr signed the Agreement, he indicated that his signature was "for Gestion Velocitas Inc.," a further indication that the Agreement committed Gestion Velocitas as a company rather than Starr as an individual. Accordingly, Gestion Velocitas may be subject to this Court's jurisdiction, but it is doubtful that Starr is. See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 906 (1st Cir. 1980) ("The general rule is that

4

jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation."); see also Interface Group-Mass., LLC v. Rosen, 256 F.Supp.2d 103, 105 (D. Mass. 2003).

The defendants have only very recently filed a motion to dismiss for lack of personal jurisdiction, and Maine Pointe has not yet had an opportunity to brief the jurisdictional issues here. Therefore, the Court declines to dismiss the claims against Starr at this time but also declines to issue a preliminary injunction against him where it is likely that the Court lacks jurisdiction over him.

The Court also declines to issue an injunction against Gestion Velocitas because Maine Pointe has failed to demonstrate a substantial likelihood that it will succeed on the merits against that defendant.

To obtain a preliminary injunction, a party must demonstrate (1) "a substantial likelihood of success on the merits," (2) "a significant risk of irreparable harm if the injunction is withheld," (3) "a favorable balance of hardships," and (4) "a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Likelihood of success on the merits is the sine qua non of the preliminary injunction inquiry. Esso Standard Oil (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

Covenants not to compete generally are enforceable "only to the extent that they are necessary to protect the legitimate business interests of the employer." Maine Contractors Co., Inc. v. Hurley, 310 N.E.2d 915, 920 (Mass. 1974). "Legitimate business interests include protection of trade secrets, confidential information, and good will." Boulanger v. Dunkin' Donuts, Inc., 815 N.E.2d 572, 578 (Mass. 2004). A covenant not to

compete designed to protect a party from "ordinary competition" does not protect a legitimate business interest and will not be enforced. Id.; Hurley, 310 N.E.2d at 920.

In the present case, the plaintiff has failed to provide sufficient evidence that it is protecting a legitimate interest. The plaintiff here alleges that the defendants contacted executives at two large Canadian companies. The evidence does not sufficiently demonstrate, however, that this contact information was a "trade secret" or "confidential information." See Jet Spray Cooler, Inc. v. Crampton, 282 N.E.2d 921, 925 (Mass. 1972); see also Augat, Inc. v. Aegis, Inc., 565 N.E.2d 415, 418 (Mass. 1991) ("general business information and routine data of a particular company normally is not protectable as confidential"). Furthermore, there is no evidence that Maine Pointe is protecting what may legitimately be considered its good will. There is no indication that these companies were existing clients of Starr, that they became close to Starr during his time with Maine Pointe, or that Starr had any success in his attempts to develop them as clients for Maine Pointe. The plaintiff has failed to demonstrate that it seeks to protect its trade secrets, confidential information, or good will. See Jet Spray Cooler, 282 N.E.2d at 925. Instead, the evidence suggests that Maine Pointe seeks to protect itself from ordinary competition. The Court cannot enforce a covenant not to compete under such circumstances. See Hurley, 310 N.E.2d at 920. The evidence also fails to demonstrate sufficiently that the defendants acted "improperly" in contacting Suncor and Marathon Oil. See United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 23 (Mass. 1990) (intentional interference claim requires "improper" interference).

Furthermore, to obtain injunctive relief, Maine Pointe must demonstrate a significant risk of irreparable harm absent issuance of the injunction. Here, the plaintiff

has not demonstrated that it faces such a risk. Indeed, it has not alleged that it has suffered any *actual* harm. Starr never developed Suncor or Marathon Oil into clients. It has not demonstrated any significant risk of irreparable harm. The plaintiff has not sufficiently demonstrated, for example, that money damages would be insufficient here if damages are shown at a later date to be appropriate. See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856 n.22 (1985) ("It is a fundamental principal of long standing that a request for an injunction will not be granted as long as an adequate remedy at law is available.")

Maine Pointe also complains that Starr has contacted former employees of Maine Pointe. The Agreement does not explicitly prohibit such contact by itself. In any event, there is insufficient evidence to indicate that such contact poses a significant risk of irreparable harm to Maine Pointe.

## III.   Conclusion

In light of the foregoing considerations, the plaintiff's motion (dkt. no. 4) for injunctive relief is DENIED.

It is SO ORDERED.

   /s/ George A. O'Toole, Jr.
United States District Judge